TOWN OF HARTLAND ET AL. *v.* JENSEN'S, INC.

BALDWIN, C. J., KING, MURPHY and MELLITZ, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

698

Argued October 8—decided November 3, 1959

*Howard J. Maxwell*, with whom was *George E. Merwin*, for the appellant (defendant).

*Edward J. Quinlan, Jr.*, for the appellee (named plaintiff).

*Charles M. Rice*, for the plaintiffs in a companion case.

BALDWIN, C. J. The defendant, Jensen's, Inc., has appealed from a judgment enjoining the use of its land in the town of Hartland as a site or park for

trailers or mobile homes in violation of an ordinance. The defendant claims that the ordinance denies it rights guaranteed by § 1 of the fourteenth amendment to the federal constitution.

The defendant presses only one of several claimed errors in the finding. The correction sought, if made, would not be of sufficient consequence to alter the decision of the case. The court found the following facts: On August 21, 1957, the defendant acquired title to ninety acres of land in Hartland. On the same day, it filed in the town clerk's office a map showing a subdivision of the land into 412 spaces for mobile homes. On July 30, 1956, the town had adopted an ordinance which limited the occupancy of land by a trailer or mobile home to a period of sixty days.[2] Hartland is a sparsely settled rural

[2] "1. No automobile, automobile trailer, truck, truck trailer, trolley car, railroad car or other vehicle, with or without wheels, designed, altered, or used for human occupancy as a home or camp, all of which terms shall hereinafter be designated by the word 'vehicle,' shall be parked and occupied for residence purposes off the public highways in the Town for a period exceeding five days without an occupancy permit issued by the Town Clerk.

"2. No such permit shall be issued by the Town Clerk until written approval of the Town Health Officer certifying compliance with State sanitary regulations, and that the presence of such vehicle will not imperil the public health, has been filed with the Town Clerk in respect to the proposed site to be occupied by such vehicle and in respect to the sanitary facilities of such vehicle.

"3. No such occupancy permit shall be issued for an initial period exceeding thirty (30) days and such permit shall be renewable for a period not exceeding an additional thirty (30) days. The permit shall state the location of the vehicle and the maximum number of persons occupying such vehicle.

"4. No such vehicle shall be parked and occupied within fifty (50) feet of a public highway unless concealed from view from such highway.

"5. Any person who violates the provisions of this ordinance shall be fined not more than $100.00. Each day when such vehicle is parked in violation of this ordinance shall constitute a separate offense."

town. Of the 21,568 acres contained within its borders, the metropolitan district owns 5131, including a reservoir, and the state 7438, devoted to forestry purposes. There are 549 residents and 325 dwelling houses. There is no public water supply or sewerage. One hundred and fifty-one children attend two elementary schools, which are overcrowded. High school pupils attend school in nearby Granby or Winsted. There is no paid police force, and fire protection is provided by two volunteer companies. The grand list of the town is $2,163,000, and its bonded indebtedness is within $76,000 of the limit imposed by statute. Rev. 1958, § 7-374 (b).

The defendant sells units for household living which are known as mobile homes. The most popular type is forty-five feet long and ten feet wide, mounted on wheels which are not removed when the unit is placed in a park. It has sanitary facilities, plumbing, shower baths, sinks and heating equipment. Such units are usually sold for about $5000 on a five-year plan of payment secured by a chattel mortgage. The defendant proposes to rent space in its park on a month-to-month basis to owners of mobile homes. Some portions of the land are swampy and others are hilly and steep. The natural course of drainage and the condition of the soil are such that Salmon Brook, which flows through Granby, could be contaminated. Statistics indicate that 80 per cent of the occupants of mobile home units remain in a park for a maximum period of one to two years. If all of the 412 spaces in the defendant's park were occupied at one time by mobile homes, the population of the park might exceed the present population of the town. On August 21, 1957, there was no provision for zoning in Hartland. The trial court concluded from

these facts that the ordinance was a reasonable exercise of the police power and enjoined the defendant from using its land as a park for mobile homes.

Section 248d of the 1955 Cumulative Supplement (Rev. 1958, § 7-148) empowers towns which do not have duly constituted local zoning or planning commissions to "regulate and provide for the licensing of parked trailers when located off the public highways, and trailer parks or mobile home parks." The defendant concedes, as it must, that this statute gives the town authority to adopt proper regulations concerning trailers and trailer or mobile home parks. The first claim of the defendant is that the ordinance does not purport to regulate mobile home parks or mobile homes but to regulate transient trailers or camp trailers or vehicles adapted to temporary living or camping purposes. The defendant draws a distinction between trailers, so-called, and mobile homes. Be that as it may, the all-inclusive phraseology of the ordinance expresses a plain legislative intent to embrace both. When, as here, a legislative enactment is unambiguous, there is no occasion to construe it, for it speaks for itself. *Wilson* v. *West Haven,* 142 Conn. 646, 654, 116 A.2d 420; *Watrous* v. *Connelly,* 141 Conn. 257, 263, 105 A.2d 654.

Claiming unconstitutionality of the ordinance, the defendant asserts that the ownership and operation of a mobile home park is a legitimate business and a legally authorized use of land. Any business or land use which affects the public health, safety or welfare is subject to the police power, exercised in a reasonable manner. *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654, 136 A.2d 801, and cases cited; *Calve Bros. Co.* v. *Norwalk,* 143

Conn. 609, 616, 124 A.2d 881. The defendant charges that the ordinance provision limiting the occupancy of space in a mobile home park is unreasonable because, as applied to a mobile home, it is prohibitory and not regulatory. The obvious purpose of the time limitation is to prevent either a trailer or a mobile home from becoming a permanent habitation in the town. It appears from the finding that the development of a park for the number of mobile homes contemplated by the defendant could involve the town in civic problems affecting the public health, safety and welfare which the resources of the town could not adequately meet. Zoning regulations prohibiting the operation of trailer parks in residential areas are a constitutional exercise of the police power. *Jensen's, Inc.* v. *Plainville,* 146 Conn. 311, 314, 150 A.2d 297; *People* v. *Lederle,* 206 Misc. 244, 250, 132 N.Y.S.2d 693, aff'd, 309 N.Y. 866, 131 N.E.2d 284; *Davis* v. *McPherson,* 58 Ohio Op. 253, 255, 132 N.E.2d 626, appeals dismissed, 164 Ohio St. 375, 130 N.E.2d 794, 164 Ohio St. 296, 130 N.E.2d 342. It is true that the town must rely upon the authority given by the statute, which confers the power to regulate but not, in those terms, the power to prohibit. The power to regulate, however, entails a certain degree of prohibition. 2 McQuillin, Municipal Corporations (3d Ed.) § 10.26. The word "regulate" implies, when used in legislation, the bringing under the control of constituted authorities the subject to be regulated. Webster, New International Dictionary (2d Ed.). It infers limitations. The statute relating to zoning, now § 8-2 of the 1958 Revision, speaks of the power to regulate and not of the power to prohibit, but it cannot be denied that zoning regulations may in their operation result in prohibition under some circumstances. *Calve Bros.*

*Co.* v. *Norwalk,* 143 Conn. 609, 617, 124 A.2d 881. In the case at bar, the legislative authority of the town properly could have determined that its geographical situation and its resources were such that temporary occupancy of land within its borders by trailers and mobile homes was feasible, but more or less permanent occupancy would overtax the abilities of the town to cope with the problems which would arise.

The defendant contends that the limited occupancy permitted by the ordinance is an unreasonable interference with its business because it is compelled, if it desires to operate a park for mobile homes, to cater to transients. Whether conditions require any regulatory measures at all and the kind and extent of such measures are matters primarily for legislative determination. "Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary." *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477; *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599; *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327. The test is whether a reasonable need to serve some phase of the public health, safety or general welfare makes regulatory legislation necessary or desirable, and whether the legislation challenged serves that need in a reasonable manner. *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654, 136 A.2d 801, and cases cited. The ordinance meets this test. Time limitations on the occupancy of land by trailers and mobile homes have been upheld by the courts of other states. *Spitler* v. *Munster,* 214 Ind. 75, 78, 14 N.E.2d 579; *Gillam* v. *Board of Health,* 327 Mass. 621, 623, 100 N.E.2d 687; *Cady* v. *Detroit,* 289 Mich. 499, 513, 286 N.W. 805, appeal dismissed, 309 U.S. 620, 60 S. Ct. 470, 84 L. Ed. 984;

*Loose* v. *Battle Creek,* 309 Mich. 1, 14, 14 N.W.2d 554; *Southport* v. *Ross,* 284 App. Div. 598, 599, 132 N.Y.S.2d 390; *Stary* v. *Brooklyn,* 162 Ohio St. 120, 134, 121 N.E.2d 11, appeal dismissed, 348 U.S. 923, 75 S. Ct. 338, 19 L. Ed. 724; note, 22 A.L.R.2d 774, 799; 37 Am. Jur. 962, § 309.

The defendant claims that there is a valid distinction between trailers designed for temporary occupancy and mobile homes designed for permanent abodes. It argues that they should not be classified together and treated in the same way. The question of classification is primarily for the legislature, and courts do not interfere unless the classification is arbitrary and unreasonable. *Second National Bank* v. *Loftus,* 121 Conn. 454, 460, 185 A. 423; *State* v. *Zazzaro,* 128 Conn. 160, 166, 20 A.2d 737; *State* v. *Hurliman,* 143 Conn. 502, 506, 123 A.2d 767. Whether a particular trailer was in fact designed for a temporary abode as distinguished from a permanent one presents a refinement which could well make the ordinance extremely difficult, if not impossible, to enforce. It cannot be said that the classification established by the ordinance was an unreasonable one.

As to the defendant's claim that the ordinance impairs the obligation of a contract, it suffices to say that there is no finding that there is any outstanding contract of the defendant which is affected. The court found that the defendant operated other trailer parks in this state; that, however, falls far short of any showing that contracts made by the defendant with tenants in those parks are affected by this ordinance in such a way as to bring the matter under constitutional prohibition. We conclude that the ordinance does not violate any constitutional mandate as claimed by the de-

fendant and that the court did not err in issuing the injunction.

There is no error.

In this opinion the other judges concurred.